# UNITED STATES BANKKRUPTCY COURT
## WESTERN DISTRICT OF MICHIGAN (GRAND RAPIDS)

| | | |
|---|---|---|
| In Re: | ) | Case No.: 19-00613-jwb |
| | ) | Chapter 7 |
| FULL SPECTRUM MANAGEMENT, LLC, | ) | Hon. James W. Boyd |
| | ) | |
| _____Debtor._____ | / | |
| | ) | |
| KELLY M. HAGAN, Chapter 7 Trustee for the estate of Full Spectrum Management, LLC, | ) ) | Adv. Pro. No.:  20- |
| | ) | Hon. James W. Boyd |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARK D. NOSS, an individual, MARK D. NOSS, O.D., L.L.C., a Michigan limited liability company, d/b/a FULL SPECTRUM EYECARE, MDN DEVELOPMENT, LLC, a Michigan limited liability company, SMART SCHOOLS MANAGEMENT, INC., a former Michigan corporation, SMART SCHOOLS MANAGEMENT OF BAY CITY, LLC, a former Michigan limited liability company, SMART SCHOOLS, INC., a former Michigan corporation and STEVEN INGERSOLL, an individual, jointly and severally, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| _____Defendants._____ | / | |

## **COMPLAINT**

Kelly M. Hagan, Chapter 7 Trustee for the estate of Full Spectrum Management,

LLC (the "Trustee" or the "Plaintiff"), states the following for her complaint against

Defendants Mark D. Noss, Mark D. Noss, O.D., L.L.C., d/b/a Full Spectrum Eyecare,

MDN Development, LLC, Smart Schools Management, Inc., Smart Schools Management of Bay City, LLC, Smart Schools, Inc. and Steven Ingersoll, jointly and severally:

## I.    THE PARTIES, JURISDICTION AND VENUE

### A.  Jurisdiction and Venue

1.      The United States District Court for the Western District of Michigan (the "District Court") has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334.

2.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (H) and (O).

3.      Venue of this Chapter 7 case and this adversary proceeding in this District and before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

4.      Plaintiff consents to entry of a final order by the Court in this adversary proceeding.

### B.  The Debtor, the Trustee, and the Bankruptcy Case

5.      Upon information and belief, Full Spectrum Management, LLC, a Michigan limited liability company, was formed on or about March 20, 2014, with Mark D. Noss as the sole member.

6.      On February 19, 2019 (the "Petition Date"), Full Spectrum Management, LLC (the "Debtor", or "Full Spectrum Management" or "FSM") filed a voluntary

petition pursuant to Chapter 7 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Michigan.

7.      The Debtor has a business address of 328 Munson Avenue, Traverse City, MI 49686.

8.      Upon information and belief, as of the Petition Date, and at all relevant times in this Complaint, the Debtor was established to act as an educational management company and exclusively provide services to Grand Traverse Academy in Traverse City, Michigan, pursuant to the Educational Provider Agreement entered into between the parties.

9.      As of the Petition Date, and at relevant times in this Complaint, upon information and belief, the Defendant, Mark A. Noss, was the sole member, owned and controlled the Debtor.

10.     On or about February 20, 2019, Kelly M. Hagan was appointed as the Chapter 7 Trustee for the Debtor's estate (the "Trustee").

11.     The Trustee is the duly appointed and acting Chapter 7 Trustee for the bankruptcy estate of the Debtor and files this complaint in this capacity.

12.     The Trustee is authorized to commence this action pursuant to 11 U.S.C. § 323 as the representative of the Debtor's bankruptcy estate.

13.    Prior to the commencement of this action, Independent Bank and the Trustee conducted examinations of the Debtor's financial affairs.

**C.  The Defendants**

14.    Defendant Mark D. Noss ("M. D. Noss" or "Defendant Noss") is an adult resident with an address of 2935 Keewaydin Trl, Traverse City, MI  49686-8564.

15.    Upon information and belief, Defendant Mark D. Noss, O.D., L.L.C. is a Michigan limited liability company which does business as Full Spectrum Eyecare ("Full Spectrum Eyecare"), which is authorized to conduct business in the State of Michigan.  Defendant's resident agent is Mark D. Noss with a registered office address of 328 Munson Avenue, Traverse City, MI 49686.

16.    Upon information and belief, Defendant MDN DEVELOPMENT, LLC ("MDN") is a Michigan limited liability company and is authorized to conduct business in the State of Michigan.  Defendant's resident agent is David H. Rowe with a registered office address of 202 East State Street, Suite 100, Traverse City, MI  49684.  Mark D. Noss is the sole member of MDN.

17.    Upon information and belief, Defendant SMART SCHOOLS MANAGEMENT, INC. ("SSM, Inc.") was a Michigan corporation that may have been dissolved as of July 15, 2018.  Upon information and belief, at formation the SSM, Inc.'s resident agent was Steven Ingersoll, with a registered office address of 1514 Center Avenue, Bay City, MI 48708 and at the time of dissolution SSM, Inc.'s resident

4

agent was Deborah M. Ingersoll, with a registered office address of 1514 Center Avenue, Bay City, MI 48708.

18.     Upon information and belief, Defendant SMART SCHOOLS MANAGEMENT OF BAY CITY, LLC. ("SSMBC, LLC") was a Michigan limited liability company that has not been in good standing since approximately March 29, 2018.   Upon information and belief, at formation the defendant's resident agent was Steven Ingersoll, with a registered office address of 1514 Center Avenue, Bay City, MI 48708 and at the time of being not in good standing, SSMBC, LLC's resident agent was Deborah M. Ingersoll, with a registered office address of 1514 Center Avenue, Bay City, MI 48708.

19.     Upon information and belief, Defendant SMART SCHOOLS, INC. ("SS, Inc.") was a Michigan corporation that may have been dissolved as of July 15, 2018. Upon information and belief, at formation the SS, Inc.'s resident agent was Steven Ingersoll, with a registered office address of 1514 Center Avenue, Bay City, MI 48708 and at the time of dissolution defendant's resident agent was Deborah M. Ingersoll, with a registered office address of 1514 Center Avenue, Bay City, MI 48708.

20.     Upon information and belief, Defendant Steven Ingersoll ("Ingersoll or Defendant Ingersoll") is an adult resident of Bay County, State of Michigan.

21.     Upon information and belief, Defendant Ingersoll and Defendant Noss, were longtime friends and business partners or colleagues through various business

ventures over the course of 25+ years prior to their involvement in the Grand Traverse Academy, a public chartered school academy located in Traverse City, Michigan.

22.   At the time the Debtor was formed in March 2014, Defendant Noss was on the Board of Directors of Grand Traverse Academy and Defendant Ingersoll was manager and the owner of Defendant, SSM, Inc., an entity that was operating and acting as the manager of Grand Traverse Academy under an Educational Provider Agreement.

## GENERAL ALLEGATIONS

### D.  The Formation of and Transition to Full Spectrum Management

23.   Upon information and belief, in mid- March of 2014, Defendant Ingersoll and Defendant Noss, approached Traverse City State Bank n/k/a Independent Bank (successor in interest by merger to Traverse City State Bank (hereafter the "Bank" or "Independent Bank") and Grand Traverse Academy("GTA") regarding Defendant Noss taking over the management of  GTA due to the fact that Defendant Ingersoll was in the midst of federal criminal proceedings for tax evasion and other alleged financial related crimes due to his financial dealings with GTA and another charter academy he was managing and affiliated with in the Bay City area (SSMBC, LLC).  At the time of those discussions, Defendant Noss was a board member of GTA and Defendant Ingersoll was managing  GTA, through his entity Smart Schools Management, Inc. under an Educational Provider Agreement with GTA, in which the Bank held a security interest.

24.    Upon information and belief, the structure and basis for Defendant Noss taking over the management of GTA came from discussions which he had with Defendant Ingersoll, which included entering into an Educational Provider Agreement between FSM and GTA.

25.    Upon information and belief, Defendant Noss submitted an email to the GTA Board on or about March 18, 2014 advising the board members, with the guidance and support of Defendant Ingersoll, of the plan formed between Defendant Noss and Defendant Ingersoll, stating in pertinent part "….I have decided to form a new management company and assume this million dollar liability to prevent this media incident and meet our obligation.  TC Bank has agreed to transfer this liability to the new management company.  Their stipulation is to release SSM's collateralized 12% management fee but replace it with a 9% collateralized fee in order to provide a reasonable means of repayment ... It is imperative this be done immediately … I will keep the same support staff in place and provide a seamless transition … It is the best possible scenario considering the timetable and will allow for the elimination of the TC State debt, ... and provide a seamless transition for students, parents and staff …." (See March 18, 2014 Noss email attached **Exhibit "1"**).

26.    Upon information and belief, as part of the discussions in those meetings with GTA and the Bank, it was represented that Defendant Ingersoll and SSM, Inc. would have no further involvement or relationship with the Bank or GTA in order to

avoid the "potentially damaging media travesty", due to the fact that Defendant Ingersoll was most likely going to prison and SSM, Inc. was not going to exist any longer.  Moreover, due to the alleged mishandling of public funds, all efforts would be made to distance Defendant Ingersoll and SSM, Inc. from GTA. (See attached **Exhibit "1"**).

27.    Upon information and belief, to move forward with the designated plan, Defendant Noss formed the Debtor and in accordance with the "plan" on March 20, 2014, Full Spectrum Management entered into a Promissory Note ("Note") with the Bank in the principal amount of $925,000.00, with interest accruing at a negotiated reduced interest rate of 4% per annum, along with changed payment terms negotiated by Defendants Noss and Ingersoll with the Bank.  (A copy of the Note is attached as **Exhibit "2"**).

28.    Upon information and belief, on March 20, 2014,   Full Spectrum Management executed a Commercial Security Agreement ("Security Agreement") which secured the indebtedness by all business assets, including but not limited to all personal property, accounts receivable, inventory, machinery, equipment, chattel paper, and other assets of Full Spectrum Management previously those of SSM, Inc. (hereafter the "Collateral"), as set forth in the Security Agreement.  (A copy of the Security Agreement is attached as **Exhibit "3"**).

29.    Upon information and belief, on March 20, 2014, Full Spectrum Management also pledged to the Bank, through an Assignment of Agreement as Collateral ("Assignment"), a security interest in all its rights, title and interest in and to the Educational Provider Agreement with Grand Traverse Academy assigned to the Debtor on or about March 19, 2014.  (See Assignment with Agreement and Amended Agreement attached as **Exhibit "4").**

30.    Upon information and belief, as part of the negotiations related to the assumption of the Bank debt and transitioning the Educational Provider Agreement to the Debtor, Full Spectrum Management, Defendant Ingersoll required the release of his personal guaranty of the SSM, Inc. Bank debt.

31.    Upon information and belief, almost immediately upon the Debtor's execution of the Bank documents and the Educational Provider Agreement all monies, assets and accounts with SSM, Inc. related to GTA were transferred and/or turned over to the Debtor.

32.    Upon information and belief, despite statements made to the Bank and GTA  by Defendant Noss and Defendant Ingersoll regarding Defendants Ingersoll and SSM, Inc. distancing themselves from GTA and the monies being paid from GTA as a management fee to the Debtor, would be ample to repay the Bank debt and other liabilities associated with the Debtor's operations and management of GTA, within just a few months of operations,  Defendant Noss, would start withdrawing large sums of

money from the Debtor classifying them as "Owner's Draws" to pay to himself and/or directing payments from Debtor to be made to  Defendant Ingersoll(or his related entities) for "consulting fees and/or license fees" to the detriment of the Bank and the Debtor's other creditors.

### E.  Payments to Defendant Ingersoll and the SSM Related Entities.

33.    Upon information and belief, despite representations to the Bank and GTA, neither Defendant Ingersoll, nor Defendant SSM, Inc. or Defendant Ingersoll's other related entities would have any further connection or relationship with GTA and presumably no further monies coming from GTA would be paid to Defendants Ingersoll or his related entities, unbeknownst to the Bank or GTA, Defendant Noss and Defendant Ingersoll negotiated and purportedly entered into a "Technical Information License Agreement"(hereafter "License Agreement"), to allow the Debtor to allegedly use certain Proprietary Information defined as "certain technical information and processes for prevention remediation and treatment of certain learning disabilities,"  related to the Debtor's management of GTA. (See attached **Exhibit "5"**).

34.    Interestingly, this alleged "License Agreement" was allegedly entered into between the Debtor and Defendant Ingersoll owned entity "Smart Schools, Inc." on or about March 19, 2014, the same day as the Educational Provider Agreement was transferred from SSM, Inc. to the newly formed Debtor, Full Spectrum Management, Inc., but this "License Agreement" was, upon information and belief was  never

discussed or provided to the Bank or GTA for review or approval, despite requiring payments of $150,000.00 a year to Smart Schools, Inc., a Steven Ingersoll owned entity, using funds the Debtor was to receive under the Educational Provider Agreement from GTA.

35.    In March or April 2014, upon information and belief, the Debtor started sending Defendant Ingersoll (or related individuals or affiliated entities of Defendant Ingersoll, SSM, Inc. or SSMBC, LLC) payments under this "License Agreement". (See attached **Exhibit "6"**).

36.    Based on the Debtor's books and records, in March, 2014 the Debtor, under the direction of Defendant Noss allegedly paid SSM, Inc. $5,241.94 "License Fee" and then in the following months of April, May, June, July, August, September, October, November and December, 2014, payments of $12,500 were paid to Defendant Ingersoll or an Ingersoll related entity and these $12,500 monthly payments continued thereafter from January, 2015 through sometime in April, 2016. (See attached **Exhibit 6"**).

37.    Upon information and belief, the Debtor also made other payments labeled as "consulting fees" to one or more of the Defendants Ingersoll, SSM, Inc. and/or SSMBC, LLC from on or about April 2014 through April 2016 in varying monthly amounts over that time period, which totaled an additional approximately $61,000 of payments going to Defendant Ingersoll or his related or affiliated entities, despite those

entities purportedly not having or supposed to be having any connection or relationship to GTA.  (See attached **Exhibit "6"**).

38.     Despite the "License Agreement" being entered into allegedly use certain "Proprietary Information" of Defendant Smart Schools, Inc., based on the Debtor's books and records, none of these licensing fees ever appeared to actually be paid to Smart Schools, Inc., but instead were directed to whatever account  Defendant Ingersoll advised Defendant Noss to send the money to at the time.

39.     Upon information and belief, from approximately March 2014 through April 2016, the Debtor paid to and/or transferred to Defendants Ingersoll, SSM, Inc., SSMBC, LLC, SS, Inc. and/or other related individuals or affiliates of those Defendants over $400,000 in monthly payments over approximately twenty-four plus month period of time.  (See attached **Exhibit "6"**).  (Hereinafter all the transfers on Exhibit "6" will be jointly referenced as the "Defendant Ingersoll/Smart School Entity Transfers").

40.     Interestingly, when Defendant Noss was asked under oath about the License Agreement and whether he had advised the Bank and/or GTA that the Debtor had entered into the License Agreement and the Debtor was going to be making payments to Defendant Ingersoll and/or his Smart School affiliated or related entities he advised he had not.  (Mark D. Noss, Rule 2004 Examination, pages 101-105).

**F. Defendant Noss Payments.**

41.    When the Debtor was established, Defendant Noss was its sole member and as such Defendant Noss had complete control over the Debtor's business operations.  As such, Defendant Noss proceeded to combine the Debtor's business operations with Defendant Full Spectrum Eyecare business operations, along with his individual business endeavors.

42.    Based upon the Debtor's books and records, the lines between the different business entities quickly became blurred, and Defendant Noss almost immediately began using the Debtor's monies and accounts as his personal accounts, to fund other business operations owned by Defendant Noss and/or Defendant Noss's personal lifestyle.

43.    The Debtor's books and records reflect that Defendant Noss, began as early as April 2014, taking "Owner's Draws" or distributions from the Debtor's accounts, including during the first eight (8) months of operations from April 2014 through December 2014, Defendant Noss recorded monthly draws and/or distributions to himself in the amount of $435,500.  This included paying himself $100,000 in draws in July, 2014 and $50,000 a month draws in August, September, October, November and December, 2014.  (See attached **Exhibit "7"**).

44.    In 2015, the Debtor's books and records show Defendant Noss recorded monthly draws and/or distributions to himself, to pay for personal expenses or to

support other entities owned solely by him in the approximate amount of $219,555. (See attached **Exhibit "7"**).

45.     In 2016 and thereafter, the Debtor's books and records show Defendant Noss recorded monthly draws and/or distributions to himself, for personal expenses or to other entities solely owned by him in the approximate amount of $136,288. (See attached **Exhibit "7"**).   (Hereinafter the Owner's Draws taken from April 2014 – August 2018, shall be the "Defendant Noss Transfers").

46.     Upon information and belief, these draws and/or distributions were being taken by Defendant Noss from the Debtor's accounts despite the Debtor's Member Agreement stating under paragraph 10:

> 10.  **Distributions**.  Distributions or cash or other assets of the Company will be made at such times and in such amounts as the Member may determine; provided, however, that a distribution will not be made if the Company would not be able to pay its debts as they become due in the usual course of business, or the Company's total assets would be less than the sum of its total liabilities, except as permitted by the Act. (See attached **Exhibit "8"**).

### G. Defendant Noss or Noss Affiliated Entity "Loans".

47.     In addition, to the Owner's draws and/or distributions being taken, Defendant Noss also loaned money to himself and/or related or affiliated entities and/or paid expenses and/or debts of various other M.D. Noss entities including, but not limited, to those loans which appear on Debtor's Schedule A/B: Assets--Real and Personal Property(Official Form 206 A/B) , Part 11, listed as owing to the Debtor :

a) Loans receivable – Mark D. Noss, O.D., L.L.C. dba Full Spectrum Eyecare in the amount of $84,632.00;

b) Loans receivable – MDN Development, LLC $99,133.00; and

c) Loans receivable – Mark D. Noss $28,604.00.

(See Debtor's Schedule A/B attached as **Exhibit "9"**).   (Hereafter, these loans may jointly be referred to as the" Noss/Noss related entity Loans" or the "Loans").

48.   Importantly, these Loans were being given by the Debtor at a time when the Debtor may not have been paying its bills on time, may not have had the resources to pay its bills on time, when the Debtor may have been insolvent, and/or the Debtor had already incurred debt far beyond its ability to pay.

49.   Based on the books and records of the Debtor and the Defendant Noss's testimony during the Rule 2004 examination, Defendant Noss as the sole member of the Debtor, MDN and Full Spectrum Eyecare, he essentially operated the entities interchangeably and with no boundaries, failed to maintain clear and concise books and records regardless as to the use of funds between the Debtor, himself and his other entities.  In addition, all of the decisions as to how the monies flowed from the Debtor to Defendant Noss and his related entities was directed and controlled by Defendant Noss.

50.   Upon information and belief, since the Debtor's formation, Defendant Noss pulled monies from the Debtor for himself or for use in his other entities, in total

disregard for the outstanding indebtedness owed to the creditors of the Debtor, at the time the Defendant Noss Transfers or Loans were made.

51.     On or about August, 2017, GTA terminated the Educational Provider Agreement with the Debtor and, upon information and belief, the Debtor did not take any action to prevent the termination.

52.     After the Debtor's contract was terminated by GTA, the Debtor stopped making payments to the Bank and its other creditors.  The Debtor was sued by the Bank on or about September 10, 2018 in the Grand Traverse County Circuit Court, Case No. 18-34597-CK, to collect on the defaulted loan.

53.     In addition to the Bank, the Debtor also stopped paying several other creditors who were providing services to the Debtor.

54.     The Debtor owed the Bank, at the time of filing the bankruptcy, the amount of $804,525.61.  (See the Bank's Proof of Claim, Claim No. 5.)

55.     On February 19, 2019, the Debtor filed its Schedule F reflecting approximately $120,000 in general unsecured claims of non-insider creditors as of the Petition Date.  (See Schedule F in attached **Exhibit "9"**).

56.     In addition to the Bank, the Debtor owes debts to a myriad of other unsecured creditors who provided various services to the Debtor over the course of the Debtor's approximately 3+ years of operations.

57.     The claims register reflects over a million dollars in total claims, which were primarily unsecured claims as of the Petition Date.

**H.  The Transfers.**

58.     Upon information and belief, the Defendant Ingersoll/Smart School Entity Transfers (defined herein and see **Exhibit "6"**) were not disclosed to the Bank or any other creditor of the Debtor, prior to these transfers being made.

59.     Upon information and belief, Defendant Noss, as the sole member of the Debtor made the decision to make the Defendant Ingersoll/Smart School Entity Transfers from the monies received under the Educational Provider Agreement, without advising or seeking the approval of GTA or the Bank, to the detriment of the Debtor's creditors and to place monies outside of the reach of the Debtor's creditors.

60.     Upon information and belief, under the direction of Defendant Noss, the Debtor made the Defendant Ingersoll/Smart School Entity Transfers to whatever entity Defendant Ingersoll directed him to pay during this twenty-four month plus period of time and each of these transfers made at the time with the intent to hinder, delay and/or defraud creditors of the Debtor.

61.     Upon information and belief, the Defendant Noss Transfers (defined herein and see **Exhibit "7"**) were not disclosed to the Bank or any other creditor of the Debtor, prior to the transfers being made.

62.     Upon information and belief, Defendant Noss, the sole member of the Debtor made the decision, in contradiction of the Debtor's Member Agreement and the Bank's security interest in the Educational Provider Agreement payments, to pay himself significant draws and/or make significant distributions without reason or basis for doing so, rather than paying the Debtor's creditors.

63.     Upon information and belief, under the direction of Defendant Noss, the Debtor made the Defendant Noss Transfers without consideration of and to the detriment of the Debtor's creditors, and to try to place such monies outside the reach of the Debtor's creditors.

64.     Under Defendant Noss's direction, the Defendant Noss Transfers caused the Debtor to become insolvent and were made with actual intent to hinder, delay or defraud creditors of the Debtor.

## COUNT I
## MDN LOAN (AND MARK D. NOSS)

65.     The Trustee incorporates by reference all prior allegations contained in this Complaint as though fully set forth herein.

66.     The Debtor, through its sole member, Defendant Noss, stated under oath on its schedules that the Debtor loaned to Defendant MDN $99,133.00 ("MDN Loan").

67.    The Debtor's sole member is Defendant Noss, who is also the sole member of Defendant MDN, stated under oath that the MDN Loan still remains unpaid and is property of the Bankruptcy Estate of FSM.

68.    MDN has failed or refused to pay the Bankruptcy Estate of FSM the money owed which is due and payable.

69.    The Debtor's secured creditor, Independent Bank, has previously demanded the Debtor to turn over all of the Bank's collateral including the outstanding accounts and loans receivable.

70.    Defendant Noss, as the sole member of MDN, is also liable for repayment of such loan as the Debtor and MDN were just a mere instrumentality of Defendant Noss and the corporate entities were used to commit a fraud or wrong on the creditors of the Debtor and there has been an unjust loss or injury to the Debtor and its creditors.

WHEREFORE, Plaintiff respectfully requests this Court to enter a money judgment in its favor and against Defendants MDN and Noss, under Count I, jointly and severally, in the amount of $99,133.00, plus all accrued interest, attorneys' fees, costs and other expenses incurred, for turnover of property of the amounts due on the MDM Loan pursuant to 11 U.S.C. §542, along with such other and further relief as this Court deems fair and equitable.

## COUNT II
## MARK D. NOSS – LOAN

71.     The Trustee incorporates by reference all prior allegations contained in this Complaint as though fully set forth herein.

72.     The Debtor, through its sole member, Defendant Noss, stated under oath on its schedules that the Debtor loaned to Defendant Noss $28,604.00 ("Noss Loan").

73.     The Debtor's sole member Defendant Noss, stated under oath that the Defendant Noss loan remains unpaid and is property of the Bankruptcy Estate of FSM.

74.     Defendant Noss has failed or refused to pay the Bankruptcy Estate of FSM the money owed which is due and payable.

75.     The Debtor's secured creditor, Independent Bank, previously demanded the Debtor turn over all of the Bank's collateral, including the outstanding accounts and loan receivable.

WHEREFORE, Plaintiff respectfully requests this Court to enter a money judgment in its favor and against Defendant Noss, Under Count II, in the amount of $28,604.00, plus all accrued interest, attorneys' fees, costs and other expenses incurred, for turnover of property of the amounts due on the Noss Loan pursuant to 11 U.S.C. §542 along with such other and further relief as this Court deems fair and equitable.

## COUNT III
## FULL SPECTRUM EYECARE – LOAN (AND MARK D. NOSS)

76.     The Trustee incorporates by reference all prior allegations contained in this Complaint as though fully set forth herein.

77.     The Debtor, through its sole member, Defendant Noss, stated under oath on its schedules that the Debtor loaned to Defendant Full Spectrum Eyecare $84,632.00 ("FSE Loan").

78.     The Debtor's sole member Defendant Noss, stated under oath that the Full Spectrum Eyecare loan remains unpaid which is property of the Bankruptcy Estate of FSM.

79.     Full Spectrum Eyecare has failed or refused to pay the Debtor the money owed which is due and payable.

80.     The Debtor's secured creditor, Independent Bank, has previously demanded the Debtor to turn over all of the Bank's collateral including the outstanding accounts and loans receivable.

81.     Defendant Noss, as the sole member of MDN, is also liable for repayment of such loan as the Debtor and MDN were just a mere instrumentality of Defendant Noss and the corporate entities were used to commit a fraud or wrong on the creditors of the Debtor and there has been an unjust loss or injury to the Debtor and its creditors.

WHEREFORE, Plaintiff respectfully requests this Court to enter a money judgment in its favor and against Defendants Full Spectrum Eyecare and Mark D. Noss,

under Count III, jointly and severally, in the amount of $84,632.00, plus all accrued interest, attorneys' fees, costs and other expenses incurred, for turnover of property of the amounts due on the FSE Loan pursuant to 11 U.S.C. §542along with such other and further relief as this Court deems fair and equitable.

## COUNT IV
## AVOIDANCE OF FRAUDULENTLY TRANSFERRED PROPERTY OR THE VALUE THEREOF PURSUANT TO 11 U.S.C. § 544(b)(1) AND THE MICHIGAN UNIFORM FRAUDULENT TRANSFERS ACT, M.C.L.A. § 566.35(1) — DEFENDANT MARK D. NOSS

82.    The Trustee incorporates by reference all prior allegations contained in this Complaint as though fully set forth herein.

83.    Pursuant to 11 U.S.C. § 544(b)(1) the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code or that is not allowable only under section 502(e) of the Bankruptcy Code.

84.    Each of the Noss Transfers constituted a transfer of property of the Debtor.

85.    The Debtor had creditors before and at the time that it made each of the Noss Transfers.

86.    The Debtor did not receive reasonably equivalent value in exchange for the Noss Transfers.

87.    The Debtor was insolvent when each of the Noss Transfers was made.

88.     In the alternative, the Debtor was rendered insolvent as a result of the each of the Noss Transfers.

89.     By reason of the foregoing, each of the Transfers is voidable pursuant to Michigan Uniform Fraudulent Transfers Act, M.C.L.A. § 566.35(1).

WHEREFORE, Plaintiff respectfully requests this Court to enter a money judgment in its favor and against Defendant Noss in an amount to be determined that is not less than $75,000.00, plus all additional accrued interest, attorneys' fees, costs and other expenses incurred, along with such other and further relief as this Court deems fair and equitable.

## COUNT V
## AVOIDANCE OF FRAUDULENTLY TRANSFERRED PROPERTY OR THE VALUE THEREOF PURSUANT TO 11 U.S.C. § 544(b)(1) AND THE MICHIGAN UNIFORM FRAUDULENT TRANSFERS ACT, M.C.L.A. § 566.34(1)(a) ─ DEFENDANT MARK D. NOSS

90.     The Trustee incorporates by reference all prior allegations contained in this Complaint as though fully set forth herein.

91.     Pursuant to 11 U.S.C. § 544(b)(1) the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code or that is not allowable only under section 502(e) of the Bankruptcy Code.

92.     Each of the Noss Transfers constituted transfers of property of the Debtor.

93.     The Debtor had creditors prior to, at the time of, and after each of the Noss Transfers were made.

94.     Each of the Noss Transfers was made with actual intent to hinder, delay or defraud creditors of the Debtor.

95.     By reason of the foregoing, each of the Noss Transfers is voidable pursuant to Michigan's Uniform Fraudulent Transfers Act, M.C.L.A. § 566.34(1)(a).

WHEREFORE, Plaintiff respectfully requests this Court to enter a money judgment in its favor and against Defendant Noss in an amount to be determined that is not less than $75,000.00, plus all additional accrued interest, attorneys' fees, costs and other expenses incurred, along with such other and further relief as this Court deems fair and equitable.

## COUNT VI
## AVOIDANCE OF FRAUDULENTLY TRANSFERRED PROPERTY OR THE VALUE THEREOF PURSUANT TO 11 U.S.C. § 544(b)(1) AND THE MICHIGAN UNIFORM FRAUDULENT TRANSFERS ACT, M.C.L.A. § 566.34(1)(b) — DEFENDANT MARK D NOSS

96.     The Trustee incorporates by reference all prior allegations contained in this Complaint as though fully set forth herein.

97.     Each of the Noss Transfers constituted transfers of property of the Debtor.

98.     The Debtor had creditors prior to, at the time of, and after it made each of the Noss Transfers.

99.   The Debtor did not receive reasonably equivalent value in exchange for each of the Noss Transfers.

100.   On the dates of each of the Noss Transfers, the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

101.   In the alternative, on the dates of each of the Noss Transfers, the Debtor engaged in or was about to engage in a business or a transaction, for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction.

102.   By reason of the foregoing, each of the Noss Transfers is voidable pursuant to the Michigan Uniform Fraudulent Transfer Act, M.C.L.A. § 566.34(1)(b).

WHEREFORE, Plaintiff respectfully requests this Court to enter a money judgment in its favor and against Defendant Noss in an amount to be determined that is not less than $75,000.00, plus all additional accrued interest, attorneys' fees, costs and other expenses incurred, along with such other and further relief as this Court deems fair and equitable.

## COUNT VII
## AVOIDANCE OF FRAUDULENTLY TRANSFERRED PROPERTY
## OR THE VALUE THEREOF PURSUANT TO 11 U.S.C. § 544(b)(1) AND THE
## MICHIGAN UNIFORM FRAUDULENT TRANSFERS ACT, M.C.L.A. §
## 566.35(1) — THE INGERSOLL/SSM DEFENDANTS

103.   The Trustee incorporates by reference all prior allegations contained in this Complaint as though fully set forth herein.

104.   Pursuant to 11 U.S.C. § 544(b)(1) the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code or that is not allowable only under section 502(e) of the Bankruptcy Code.

105.   The Defendant Ingersoll/Smart School Entity Transfers constituted a transfer of property of the Debtor.

106.   The Debtor had creditors before and at the time that it made the Defendant Ingersoll/Smart School Entity Transfers.

107.   The Debtor did not receive reasonably equivalent value in exchange for the Defendant Ingersoll/Smart School Entity Transfers.

108.   The Debtor was insolvent when the Defendant Ingersoll/Smart School Entity Transfers were made.

109.   In the alternative, the Debtor was rendered insolvent as a result of the Defendant Ingersoll/Smart School Entity Transfers.

110.   By reason of the foregoing, the Defendant Ingersoll/Smart School Entity Transfers are voidable pursuant to Michigan Uniform Fraudulent Transfers Act, M.C.L.A. § 566.35(1).

WHEREFORE, Plaintiff respectfully requests this Court to enter a money judgment in its favor and against Defendants Steven Ingersoll, SSM Inc., SS, Inc., SSMBC, Inc., jointly and severally, in an amount to be determined that is not less than $75,000.00, plus all additional accrued interest, attorneys' fees, costs and other expenses incurred, along with such other and further relief as this Court deems fair and equitable.

## COUNT VIII
## AVOIDANCE OF FRAUDULENTLY TRANSFERRED PROPERTY OR THE VALUE THEREOF PURSUANT TO 11 U.S.C. § 544(b)(1) AND THE MICHIGAN UNIFORM FRAUDULENT TRANSFERS ACT, M.C.L.A. § 566.34(1)(a) — THE INGERSOLL/SSM DEFENDANTS

111.   The Trustee incorporates by reference all prior allegations contained in this Complaint as though fully set forth herein.

112.   Pursuant to 11 U.S.C. § 544(b)(1) the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code or that is not allowable only under section 502(e) of the Bankruptcy Code.

113.   The Defendant Ingersoll/Smart School Entity Transfers constituted transfers of property of the Debtor.

114.   The Debtor had creditors prior to, at the time of, and after it made the Defendant Ingersoll/Smart School Entity Transfers.

115.   The Defendant Ingersoll/Smart School Entity Transfers made with actual intent to hinder, delay or defraud creditors of the Debtor.

116.   By reason of the foregoing, the Defendant Ingersoll/Smart School Entity Transfers are voidable pursuant to Michigan's Uniform Fraudulent Transfers Act, M.C.L.A. § 566.34(1)(a).

WHEREFORE, Plaintiff respectfully requests this Court to enter a money judgment in its favor and against Defendants Steven Ingersoll, SSM Inc., SS, Inc., SSMBC, Inc., jointly and severally, in an amount to be determined that is not less than $75,000.00, plus all additional accrued interest, attorneys' fees, costs and other expenses incurred, along with such other and further relief as this Court deems fair and equitable.

### COUNT IX
### AVOIDANCE OF FRAUDULENTLY TRANSFERRED PROPERTY OR THE VALUE THEREOF PURSUANT TO 11 U.S.C. § 544(b)(1) AND THE MICHIGAN UNIFORM FRAUDULENT TRANSFERS ACT, M.C.L.A. § 566.34(1)(b) ─ THE INGERSOLL/SSM DEFENDANTS

117.   The Trustee incorporates by reference all prior allegations contained in this Complaint as though fully set forth herein.

118.   The Defendant Ingersoll/Smart School Entity Transfers constituted transfers of property of the Debtor.

119. The Debtor had creditors prior to, at the time of, and after it made the Defendant Ingersoll/Smart School Entity Transfers.

120. The Debtor did not receive reasonably equivalent value in exchange for the Defendant Ingersoll/Smart School Entity Transfers.

121. On the date of the Defendant Ingersoll/Smart School Entity Transfers, the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

122. In the alternative, on the date of the Defendant Ingersoll/Smart School Entity Transfers, the Debtor engaged in or was about to engage in a business or a transaction, for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction.

123. By reason of the foregoing, the Defendant Ingersoll/Smart School Entity Transfers are voidable pursuant to the Michigan Uniform Fraudulent Transfer Act, M.C.L.A. § 566.34(1)(b).

WHEREFORE, Plaintiff respectfully requests this Court to enter a money judgment in its favor and against Defendants Steven Ingersoll, SSM Inc., SS, Inc., SSMBC, Inc., jointly and severally, in an amount to be determined that is not less than $75,000.00, plus all additional accrued interest, attorneys' fees, costs and other expenses incurred, along with such other and further relief as this Court deems fair and equitable.

## COUNT X
## RECOVERY OF FRAUDULENTLY TRANSFERRED PROPERTY
## OR THE VALUE THEREOF PURSUANT TO 11 U.S.C. § 550(a) —
## DEFENDANT MARK D. NOSS

124.   The Trustee incorporates by reference all prior allegations contained in this Complaint as though fully set forth herein.

125.   Each of the Transfers made to or for the benefit of Defendant Noss of property of the Debtor is avoidable in its entirety pursuant to Section 544 of the Bankruptcy Code, as set forth above.

126.   Defendant Noss was either (i) the initial transferee of each of the Transfers, (ii) the entity for whose benefit each of the Transfers were made, or (iii) an immediate or mediate transferee of each of the Transfers.

127.   Each of the Transfers that are avoided under Section 544 of the Bankruptcy Code is recoverable pursuant to Section 550 of the Bankruptcy Code.

128.   Subject to potential defenses, the Trustee is entitled to recover the value of each of the Transfers pursuant to Section 550(a) of the Bankruptcy Code from Defendant Noss.

WHEREFORE, Plaintiff respectfully requests this Court to enter a money judgment in its favor and against Defendant Noss in an amount to be determined that is not less than $75,000.00, plus all additional accrued interest, attorneys' fees, costs and other expenses incurred, along with such other and further relief as this Court deems fair and equitable.

## COUNT XI
## RECOVERY OF FRAUDULENTLY TRANSFERRED PROPERTY
## OR THE VALUE THEREOF PURSUANT TO 11 U.S.C. § 550(a)
## <u>INGERSOLL/SSM ENTITY DEFENDANTS</u>

129.   The Trustee incorporates by reference all prior allegations contained in this Complaint as though fully set forth herein.

130.   The Defendant Ingersoll/Smart School Entity Transfers made to or for the benefit of the Ingersoll/Smart School Entity Defendants of property of the Debtor is avoidable in its entirety pursuant to Section 544 of the Bankruptcy Code, as set forth above.

131.   The Ingersoll/Smart School Entity Defendants were either (i) the initial transferee of each of the Ingersoll/Smart School Entity Transfers, (ii) the entity for whose benefit each of the Ingersoll/Smart School Entity Transfers were made, or (iii) an immediate or mediate transferee of each of the Ingersoll/Smart School Entity Transfers.

132.   The Ingersoll/Smart School Entity Transfers that are avoided under Section 544 of the Bankruptcy Code are recoverable pursuant to Section 550 of the Bankruptcy Code.

133.   Subject to potential defenses, the Trustee is entitled to recover the value of the Ingersoll/Smart School Entity Transfers pursuant to Section 550(a) of the Bankruptcy Code from the Ingersoll/Smart School Entity Defendants.

WHEREFORE, Plaintiff respectfully requests this Court to enter a money judgment in its favor and against Defendants Steven Ingersoll, SSM, Inc., SS, Inc. and SSMBC, Inc., jointly and severally, in an amount to be determined that is not less than $75,000.00, plus all additional accrued interest, attorneys' fees, costs and other expenses incurred, along with such other and further relief as this Court deems fair and equitable.

## COUNT XII
## DISSALLOWANCE OF CLAIM NUMBER 7 FILED BY MARK D. NOSS

134.    The Trustee incorporates by reference all prior allegations contained in this Complaint as though fully set forth herein.

135.    Mark D. Noss has filed Claim Number 7 in this bankruptcy estate alleging that the Debtor is obligated to Mark D. Noss for the lease of real property.

136.    Mark D. Noss has not attached any documents to support the claim against the Debtor for the lease of real property.

137.    Plaintiff seeks disallowance of any claim, including Claim Number 7, of Mark D. Noss against the Debtor, pursuant to 11 USC §502(d) until Mark D. Noss has paid any amount for which he is liable under §§542, 550 and 553.

138.    Plaintiff further objects to Claim Number 7 in its entirety as such claim is made between insiders, is not supported by past practice, is unreasonable and was a scheme to wrongfully distribute monies from the Debtor to an insider.

## COUNT XIII
## DISSALLOWANCE OF CLAIM NUMBER 8 FILED BY
## MARK D. NOSS, O.D., L.L.C.

139.    The Trustee incorporates by reference all prior allegations contained in this Complaint as though fully set forth herein.

140.    Mark D. Noss, O.D., L.L.C. dba Full Spectrum Eyecare has filed Claim Number 8 in this bankruptcy estate alleging that the Debtor is obligated to Mark D. Noss, O.D., L.L.C. dba Full Spectrum Eyecare for office sharing expenses.

141.    Mark D. Noss, O.D., L.L.C. dba Full Spectrum Eyecare has not attached any documents to support the claim against the Debtor for the office sharing expenses.

142.    Plaintiff seeks disallowance of any claim, including Claim Number 8, of Mark D. Noss, O.D., L.L.C. dba Full Spectrum Eyecarepursuant to 11 USC §502(d) until Mark D. Noss, O.D., L.L.C. dba Full Spectrum Eyecare has paid any amount for which it is liable under §§542, 550 and 553.

143.    Plaintiff further objects to Claim Number 8 in its entirety as such claim is made between insiders, is not supported by past practice, is unreasonable and was a scheme to wrongfully distribute monies from the Debtor to an insider.

## COUNT XIV
## DISSALLOWANCE OF CLAIM NUMBER 9 FILED BY
## MDN DEVELOPMENT, LLC

144.    The Trustee incorporates by reference all prior allegations contained in this Complaint as though fully set forth herein.

145.   MDN Development, LLC has filed Claim Number 9 in this bankruptcy estate alleging that the Debtor is obligated to MDN Development, LLC for contribution on a judgment entered against the Debtor and MDN Development, LLC.

146.   MDN Development, LLC has not paid any amount nor does it intend to pay any amount due on the judgment for which contribution is requested.

147.   Plaintiff seeks disallowance of any claim, including Claim Number 9, filed by MDN Development, LLC pursuant to 11 USC §502(d) until MDN Development, LLC has paid any amount for which it is liable under §§542, 550 and 553.

148.   Plaintiff further objects to Claim Number 9 pursuant to 11 USC §502(e)(1) to the extent such claim is disallowed and is contingent at the time such claim is allowed or disallowed.

## **PRAYER FOR RELIEF**

WHEREFORE, the Trustee respectfully requests and prays that:

a)   Judgment be entered against:

   i.   Mark D. Noss and MDN Development, jointly and severally, under Count I, in the amount of $99,133.00;

   ii.   Mark D. Noss, under Count II, in the amount of $28,604.00;

   iii.   Mark D. Noss and Full Spectrum Eyecare, jointly and severally, under Count III, in the amount of $84,632.00, plus all accrued interest, costs, expenses and attorneys' fees;

b)     the Noss Transfers be avoided and that a Judgment be entered against Defendant Noss in an amount to be determined that is not less than $75,000.00, plus costs, interest, expenses and attorney fees;

c)     the Defendant Ingersoll/Smart School Entity Transfers be avoided and that a Judgment be entered against Defendants, Steven Ingersoll, SSM, Inc., SS, Inc. and SSMBC, Inc., jointly and severally, in an amount to be determined that is not less than $75,000.00, plus costs, interest, expenses and attorney fees;

d)     Disallow claims against the bankruptcy estate asserted by Mark D. Noss, Mark D. Noss, O.D., L.L.C. dba Full Spectrum Eyecare and MDN Development, LLC, including but not limited to Claim Numbers 7, 8 and 9 filed in this bankruptcy estate; and

e)     such other and further relief against all Defendants as this Court deems fair, just and proper.

Respectfully submitted,

**BEADLE SMITH, PLC**

DATED: April 28, 2020      By:_____/s/ Kevin M. Smith_____
                                       Kevin M. Smith (P-48976)
                                       Attorneys for Trustee
                           Business Address & Telephone:
                                       445 South Livernois, Ste. 305
                                       Rochester Hills, MI  48307
                                       (248) 650-6097
                                       Email:  Ksmith@bbssplc.com